CHARLES H. GRAVES v. CHARLES C. JANES AND OHIO AUTOMOBILE ASSN.

1. **Automobile Law of 1913 Invalid Because Act is a Revenue Producing Measure.**

     Section 3609 (6309) G. C. as amended 103 O. L. 765, disposing of the revenues for registration of automobiles, one-third to the repair, maintenance, protection, policing and patrolling of roads, leaving the balance in the general revenue fund of the state treasury, evinces an intention on the part of the legislature, in view of the operation and revenue producing tendencies of former laws, to raise the larger part of the license fund for general revenue purposes and to that extent is unconstitutional and void.

2. **Failure to Include Other Vehicles Does not Render Law Discriminatory.**

     Section 6293 G. C. et seq., 103 O. L. 763, in that it fails to include horse-drawn vehicles, especially of the heavier type, is not discriminatory, the wear and tear upon highways and streets from the greater speed of the motor driven vehicles being considered and the necessity of police regulation being greater because not confined to the limited mileage. Nor is the act discriminatory because of the exemption in favor of fire and police apparatus, road rollers and traction engines.

Graves v. Janes.

**3. Schedule of Fees for Registration Based on Horse Power Ratings not Discriminatory.**

A classification of motor vehicles according to horse power ratings, prescribed by Sec. 6294 G. C., is not invalid on account of uncertainty and inaccuracy of the basis of such ratings; the distinction between gasoline and electric driven automobiles, prescribing a flat rate for the latter as distinguished from the former ratings does not render the statute unconstitutional because of the lighter weight and necessarily local operation of the electrics.

**4. Repealing Clause of 1913 Automobile Law Invalid, not being Separable.**

Act 103 O. L. 763, amending Secs. 6294 et seq., imposing a graduated license tax on automobile owners and users and disposing of the revenues thereof, being unconstitutional as a general revenue measure, and the unconstitutional or revenue features not being separable, the entire act is vitiated; Sec. 2 of act 103 O. L. 766, repealing clause, is also void and the corresponding sections repealed are revived.

ERROR to common pleas court.

*T. S. Hogan,* Atty. Gen., for plaintiff in error.

*R. H. Lee, C. D. Saviers, H. L. Gordon,* for defendants in error.

**ALLREAD, J.**

This action involves the constitutionality of the Automobile License act of 1913 (103 O. L. 763), providing for a system of identification and registry of motor vehicles and the annual payment of cerain graded license fees.

The act under consideration is an amendment to an act upon the same subject passed in 1908, amended in 1909 and embodied in the General Code as Secs. 6290 to 6310 inclusive.

The main features of the act of 1913 are to bring in motor-bicycles and motorcycles, increase the license upon gasoline and steam cars according to horse power, increase the flat rate upon electrics and upon manufacturers, dealers and chauffeurs; and to leave substantially two-thirds of the total receipts in the general revenue fund of the state.

The constitutionality of the act under consideration is challenged chiefly upon the following grounds:

(1)   Want of legislative power upon the general subject matter.

(2)   Unlawful discrimination, and

(3)   Illegality and unreasonableness in the amount and the purpose of the fee exacted.

We think the power of the General Assembly to prescribe a license fee for vehicles using the highways of the state or those whose use thereof creates a special burden, is clearly supported by reason and authority.

From the foundation of our state the public highways have been largely maintained by general taxation. The general principle underlying this system of road improvement was the general public welfare and the approximate equality of the benefits as represented by the taxable property of individuals. The condition in the earlier history of the state especially exemplifies the appropriateness of that form of taxation. In the development of the state a more expensive system of roads was demanded in the populous centers and the necessity or at least advisability of imposing a portion of the expense of maintaining the highways of the larger municipalities upon the owners of vehicles whose use of such highways was specially burdensome. The constitutionality of laws enacted for the purpose indicated was challenged and the power of the legislature to enact such laws was sustained in the leading case of *Marmet* v. *State,* 45 Ohio St. 63 [12 N. E. Rep. 463].

In recent years new problems of road building and repair have arisen by the prevalent use of motor vehicles and this problem has been increased by the skill of the inventor and the manufacturer in building practical cars of high power and speed. The state is, therefore, confronted with the necessity or expediency of building better roads for the accommodation of this new method of travel and of providing for the increased expenses of repairs upon highways by reason of this new use, and to preserve the highways in repair for all kinds of travel.

In the case of *Cincinnati* v. *Bryson,* 15 Ohio 625, 644 [45 Am. Dec. 593], where the right of the state to authorize cities to charge a license fee upon the use of drays, hacks, omnibuses and other heavy vehicles was involved, Birchard, J., says:

"It is manifest to every one, that, in a large city, vehicles of this description cause great destruction to the public ways,

Graves v. Janes.

far greater than the usual ordinary travel of citizens otherwise employed. There is, therefore, no injustice in exacting a reasonable portion of the expenses which such special occupations cause to the community; and those who enjoy the special privilege, can refuse to bear a reasonable portion of the burden but with an ill grace.''

In the case of *Marmet* v. *State, supra,* the general legislative authority in respect to vehicle license tax is defined as follows:

''The General Assembly has power  *  *  *  to regulate occupations by license, and to compel, by imposition of a fine, payment of a reasonable fee, where a special benefit is conferred by the public upon those who follow an occupation, or where the occupation imposes special burdens on the public, or where it is injurious to or dangerous to the public.''

While there is an intimation of doubt expressed by Price, J., in the case of *Pegg* v. *Columbus,* 80 Ohio St. 383 [88 N. E. Rep. 14; 23 L. R. A. (N. S.) 453], yet, we think the right to enact a license law including a reasonable charge as a privilege tax is clearly established in this state.

It is also claimed that the act is discriminatory and in violation of the uniformity clause of the constitution. This contention is founded upon the general exemption of horse drawn vehicles and certain motor vehicles.

The uniformity clause of the constitution does not prevent reasonable classification of the subjects of legislation. Motor vehicles are a just subject of classification in respect to the use of public highways as distinguished from horse drawn vehicles. No better statement of this proposition can be made than that found in the opinion of Spear, J., in the case of *Allen* v. *Smith,* 84 Ohio St. 283 [95 N. E. Rep. 829; 24 Ann. Cas. 611], as follows:

''Doesn't everybody know that the automobile is a new machine of travel; its use a new use of the highways; that it is dangerous to other travelers; that its power, its capacity for speed, the temptation it affords the reckless driver to operate it at a dangerous rate and in a careless manner, all distinguish the automobile from all other vehicles. Surely it can not be necessary to further elaborate this fact so patent to every ob-

serving and reading person.  The automobile is, therefore, a class by itself, the users of such machines a class by themselves, and legislation in recognition of this condition is based upon solid, easily recognized distinctions.''

This classification deals more especially with the necessity of police regulation.  The burden of highway maintenance as between motor vehicles and horse drawn vehicles is as clearly pronounced.

Reference is made in the briefs to the burden of the heavier of the horse drawn vehicles as compared with automobiles.  Even this comparison does not eliminate a reasonable foundation for distinction.   Horse drawn vehicles move slowly and are necessarily confined to a limited mileage, so that the total of the wear upon the highways by horse drawn vehicles is considerably less than that of motor vehicles and the necessity for police regulation of horse drawn vehicles is materially less than that of motor vehicles.  It is, however, contended that there is unjust and unfair discrimination in the special exemptions of certain motor vehicles.  The exemption in favor of fire engines, fire trucks and police patrol wagons which are governmental agencies maintained by general taxation is manifest.   Road rollers which are used largely by public authorities for road purposes, may be exempted for the same reason. Public ambulances may include those owned by public authorities as well as those privately owned, but may legitimately be excepted because of the public welfare involved in their use.  It would be strange, indeed, if not an anomaly in the administration of government if a tax was imposed upon vehicles so used.

The exemption of traction engines is particularly complained of.   The court will take judicial notice that these engines are generally used for power purposes in threshing grain and the like and that their use of the highways is merely incidental. Their speed is low and the total mileage of travel small.  A touring car will travel almost as many miles of highway in a single day as the traction engine will travel in the course of an entire season.  Besides the very useful purpose of the traction engine and its relation to the production of food supplies  for the citizens of the state may of itself furnish grounds for legislative

Graves v. Janes.

classification. This feature is fully discussed by Spear, J., in the case of *Marmet* v. *State, supra.*

Street cars and vehicles upon fixed trades are already specially taxed and may therefore be exempted from this act.

There is complaint of the uncertainty and inaccuracy of the basis of horse power rating established in the act in respect to steam and gasoline cars. While this is a subject for judicial notice, yet the court has been favored with evidence bearing upon this feature. From the evidence we are advised that the same basis of horse power rating adopted by the act is well recognized and has been employed by leading manufacturers, and while in the recent development of engine making there may be some inaccuracy, still we think this basis is sufficiently definite to justify legislative adoption. There is also sufficient reason for the flat rate charges upon electrics. The electrics in general use are comparative slow moving and of low horse power. While it may be true that electrics of high speed have been constructed, yet it is equally true that they are not in general use. Should they become so, it will be ample time for the legislature to act.

This brings us to a consideration of the amount and legality of the license charge. This feature is the most difficult of solution. The identification and registry of motor vehicles has a legitimate purpose, but it is clear that the charge provided for in the act under consideration goes far beyond this purpose. The act clearly contemplates other purposes and such purposes must be ascertained and their legality determined by constitutional limitations. It is apparent from the entire act that in addition to identification and registry, that the privilege of the use of the roads by motor vehicles and of police regulation thereon is contemplated. The imposition of a reasonable charge for reimbursement for road maintenance and repair and for policing the road in view of the special uses contemplated by the act is warranted by the general grant of legislative power. This is not a property tax but a privilege tax. The reasonableness of a privilege tax is confided largely to the discretion of the general assembly, but for the abuse of such legislative power, a final review is in the courts.

· The opinion of the court in reviewing the power to levy excise taxes in the case of *Southern Gum Co.* v. *Laylin,* 66 Ohio St. 578 [64 N. E. Rep. 564], is illustrative. But the case of *Pegg* v. *Columbus, supra,* where the whole scope of the reasonableness of the act then under consideration was reviewed is analogous and directly in point. The right of the use of the public ways of the state is in a measure inherent in every citizen, but clearly that right may be regulated to subserve the interests of the public welfare. When, therefore, the legislature clearly exceeds the limit of reasonable taxation for the privilege conferred or the burden imposed or when the charge imposed is clearly founded upon an improper basis or for an unwarranted purpose, it is the duty of the courts to declare the act invalid.

Section 3609 (6309) requires the revenue derived from registration fees to be applied to the expenses of the registry department and the surplus paid into the state treasury. The act provides that one-third of the revenue paid into the state treasury:

"Shall be used for the repair, maintenance, protection, policing and patrolling of the public roads and highways of this state under the direction, supervision and control of the State Highway Department."

No special provision having been made for the other two-thirds of this revenue, it remains in the general revenue fund. It is true that the general revenue fund is subject to special appropriation for any lawful purpose. But we can not escape the conclusion that the manifest purpose of the general assembly in appropriating expressly for highway purposes, including both maintenance and policing but one-third of such revenue and leaving the other two-thirds in the general revenue fund of the state clearly discloses an intention upon the part of the general assembly to raise the larger portion of this fund for general revenue purposes. The act is therefore, to that extent a general revenue measure.

What further special burden or benefit than that provided for in the special appropriation for road purposes is involved in the use of highways by motor vehicles upon which to found a legitimate right to tax them for general revenue? Increased

Graves v. Janes.

litigation in the criminal and civil courts would probably support an allotment of some share to the general revenue fund. But that consideration would not of itself justify the large portion of this tax devoted to general revenue. Nor, can we conceive of any other reason justifying it.

The cases of *State* v. *Ferris*, 53 Ohio St. 314 [41 N. E. Rep. 579; 30 L. R. A. 218], and *Ashley* v. *Ryan*, 49 Ohio St. 504 [31 N. E. Rep. 721], are cited to support the contention that the power to levy an excise tax involves by implication the right to appropriate the tax to the general revenue fund.

The vehicle tax involved in the act under consideration does not rest upon the same basis as the excise tax involved in the cases cited.

The authorities in this state do not attempt to classify vehicle tax as an excise tax, but it is rather considered to be a special privilege tax imposed as compensation for special burdens and inconveniences.

In all cases involving vehicle license taxes brought before the Supreme Court the revenues were appropriated to highway uses and this case brings up for the first time, so far as we are advised before the courts of this state the question of the right to impose a vehicle tax wholly or partly for general revenue.

We are, therefore, forced to the conclusion that the act under consideration so far as it applies to the owners and users of motor vehicles is, in large part, a general revenue measure and to that extent is unconstitutional and void. The unconstitutional or revenue features of the act not being separable, vitiates the entire provision of the act in respect to owners and users.

In view of our finding as to the unconstitutionality of the act, we do not feel justified in expressing an opinion as to whether the schedule of fees therein provided is so clearly excessive as to warrant a court in declaring the same invalid, if the legislature had expressly declared it necessary to raise such entire fund for the purpose of maintaining, repairing and policing the public highways and had appropriated the entire amount so raised less the cost of maintaining the department to such uses.

The main and controlling object of the amendment of 1913,

being void, the repealing act to that extent is void and the corresponding sections of the former act are revived.   All the main features of the present act except the general revenue feature are involved in the former act. Having that in view, we have discussed the general features applicable to the former act and find no constitutional infirmity.   The section of the former act defining motor vehicles includes among  the  exceptions  motor bicycles and motorcycles in addition to those of the present act. That motorcycles and motor bicycles may be separately classified, we think is apparent.

Section 6302 of the act of 1913, in respect to license for chauffeurs is clearly constitutional.

Section 6301 of the act of 1913, imposes a flat rate upon manufacturers and dealers in motor vehicles.   This rate is not apparently excessive and no particular argument has been made against it.   It is also more in the nature of an occupation tax and we, therefore, sustain that section, notwithstanding the provision as to the application of the fund.

The injunction allowed in the court of common pleas should be modified and limited so as to conform to this opinion and as so modified will be affirmed.

**Ferneding** and **Kunkle, JJ.**, concur.