Struble, J.
This cause is before the court on demurrer to the petition, the sole ground of which is that the petition does not “set forth facts sufficient to constitute a cause of action.”
The plaintiff, a taxpayer, brings this action against the county treasurer, county auditor and the commissioners of *106 Hamilton county, Ohio, claiming that of the sum of $789,098.08, auto license fees allotted to Hamilton county for the year 1932, said officials diverted $632,123.85 to uses other than for road and highway purposes; and that of the sum of $749,098.02, auto license fees allotted to Hamilton county from January 1, 1933, to September 1, 1933, said officials diverted to the General Fund of Hamilton County $444,604.73'; to the Library Fund $65,985.12; to the Sinking Fund $110,054.00; and to the Road and Bridge Fund only $128,702.70.
Plaintiff says that the diversion by said officials of auto license fees to other than for highway uses is illegal and void and a violation of the Ohio and United States Constitutions.
Plaintiff says further that said officials are and will continue to make illegal diversions from said auto license fees unless restrained by this court.
Wherefore, plaintiff asks that this court issue a mandatory injunction ordering said officials to restore to Highway Funds such auto license fees which they have diverted to other uses; and for other relief to which he may be entitled.
The petition sets out the passage of Senate Bill No. 328, adopted by the Eighty-ninth General Assembly, which became effective on October 14, 1931, and includes among others Sections 6291, 6292, 6309-2 and 6309-2-b, General Code of Ohio, authorizing the levying and distribution of this tax.
Section 6291 became effective October 14, 1931, and was amended in 1932, effective April 5, 1932.
Said Section 6291 and the amendment thereto effective April 5, 1932, provides for an annual license tax upon the operation of motor vehicles on the public roads and highways of this state for the following purposes:
“1. Of enforcing and paying expenses of administering the laws relative to the registration and operation of such vehicles.
“2. Maintaining and repairing public roads, highways and streets.”
“3. Paying the county’s proportion of the cost and expenses of co-operating with the department of highways in the improvements and construction of said highways;
*107 “A. Paying the county’s portion of the damages, compensation, cost and expenses of constructing, reconstructing, improving, maintaining and repairing roads;
“5. ‘And for the use of the general-funds of the counties and the townships.’
“6. For the purpose of providing poor relief in the various counties of this state.”
Section 6309-2 of said act provides for the distribution of those taxes as follows:
“1. Twenty-five per cent for the use of the municipal corporations or county which constitute the district of registration; the county’s portion to be used for the maintenance and repair of roads and highways and for no other purposes and shall not be subject to transfer.
“2. Five per cent of all taxes constitute a fund for the use of the several counties for highways and road purposes, and shall be distributed equally to each county within the state.
“3. Forty-seven per cent of all the taxes shall be for the use of the county in which the owner resides for the construction, reconstruction, improvement, maintenance and repair of roads and highways.
“4. Twenty-three per cent of the taxes to be' paid to the commissioner of motor vehicles to the credit of the state maintenance and repair fund, as provided by Section 6309 General Code.”
Section 6309-2b of said act provides that in the years 1932 and 1933 the monies received in the treasury of the county under paragraphs 2 an.d 3 of Section 6309-2, as amended by said act, shall be distributed as follows:
“1. There shall be distributed and paid into each of the several funds of the_ county, including funds created by county levies for public library purposes and county library district levies, and into each of the several funds of each township an amount which would have been produced by the rates of taxation levied for the purposes of such county and township in the year 1930, on the kinds and classes of personal property as listed and assessed for taxation in said year in the county and township, to-wit: motor vehicles, household goods, musical instruments, monies, etc.
“2. There shall be distributed and paid into the funds for the payment of county’s proportion of the expenses of cooperating with the State Highway for road purposes.
“3. The balance to be used for road purposes in the county”.
*108 Excise Taxes.
These annual license fees imposed upon owners of motor vehicles are excise taxes, — or charges for the privilege of operating motor vehicles on the public roads and highways.
In Saviers, et al., v. Smith, Secretary of State, 101 O. S. at page 132, syl. 4, and “excise tax” is defined as follows:
“An excise tax is a tax imposed on the performance of an act, the engaging of an occupation or the enjoyment of a privilege, and by the provisions of Section 10, Article XII of the Constitution, specific authority has been conferred for the levying of such a tax.”
On the general subject of taxes and scope and character of excises, Section 18, Yol. 26, Ruling Case Law, is illuminating.
“Taxes fall naturally into three classes, namely, capitation or poll taxes, taxes on property and excise taxes. Capitation or poll taxes are taxes of a fixed amount upon all the persons of a certain class, resident within a specified territory, without regard to their property or the occupations in which they may be engaged. Taxes on property are taxes assessed on all property or on all property of a certain class located within a certain territory on a speci-. fied date in proportion to its value, or in accordance with some other reasonable method of apportionment, the obligation to pay which is absolute and unavoidable and is not based upon any voluntary action of the person assessed. * * * Excises, in their original sense, were something cut off from the price paid on a sale of goods as a contribution to the support of government. The word has however come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation. * * * An excise is usually enforced by prohibiting the performance of the act which is the' subject of the tax until the tax is paid.”
General Asseimbly Taxing Power.
The legislative power vested by the Ohio Constitution, Article II, Section 1, in the General Assembly of Ohio includes the general power of taxation subject to such limitations of the power, and the manner of its exercise as may *109 be contained in the United States Constitution and other provisions of the Ohio Constitution.
In the Saviers’ case, supra, the Supreme Court in paragraph one says:
“The power to tax is an attribute of sovereignty and in this state is included in the general legislative power which is conferred by Section 1, Article II of the Constitution, upon the General Assembly without limitation.”
While the General Assembly might levy these license fees in the exercise of its legislative power, yet in addition thereto it has been given special authority under Article XII, Section 10, of the Ohio Constitution adopted in 1912:
“Laws may be passed providing for excise and franchise taxes, and for the imposition of taxes upon the production of coal, oil, gas and other minerals.”
While there are no express constitutional limitations in the Ohio Constitution of the power of the General Assembly as to the levying of excise taxes, yet there are implied limitations according to authoritative decisions of this state holding that privilege taxes of the character under consideration must bear a reasonable relation to the value of the privilege. This principle has been stated by the Supreme Court in Southern Gum Co. v. Laylin, 66 O. S., 578; Saviers v. Smith, 101 O. S., 132, and by the Court of Appeals in Graves v. Janes, et al, 2 Ohio App. 383.
The particular question is as to the power of the General Assembly to authorize the use of the funds from these license fees for other than highway purposes.
In the Southern Gum Co. case the'court points out the limitations of the general taxing power of the General Assembly and then says at page 594:
“But upon the power to tax privileges and franchises there is no express limitation in the constitution, but certain'limitations upon that power must be implied from other provisions of the constitution, so as to make the whole instrument harmonious and consistent throughout. The constitution was established “to promote our common welfare.” Preamble to the ■ constitution. Government is instituted for the equal protection and benefit of the people. Section two of the bill of rights. Private property shall ever be held inviolate, but subservient to the public wel *110 fare. Section nineteen of the bill of rights. These provisions of the constitution are implied limitations upon the power of taxaton of privileges, and franchises, and limit such taxation to the reasonable value of the privilege or franchise conferred originally, or to its continued value from year to year.” * * * “These limitations prevent confiscation and oppression under the guise of taxation, and the power of such taxation cannot extend beyond what is for the common or public welfare, and the equal protection and benefit of the people but the ascertaining and fixing of such value rests largely in the General Assembly, but finally in the courts.”
In the Graves case, supra, decided in 1914 by the Court of Appeals of Franklin county, the court had for consideration the constitutionality of the automobile license act of 1913, by the provisions of which two-thirds of the revenue was to remain in the general fund, and as to this the court said at page 391 of its opinion:
“But we cannot escape the conclusion that the manifest purpose of the General Assembly in appropriating expressly for highway purposes, including both maintenance and policing, but one-third of such revenue and leaving the other two-thirds in the general revenue fund of the state, clearly discloses an intention upon the part of the General Assembly to raise the larger portion of this fund for general revenue purposes. The act is therefore, to that extent, a general revenue measure.”
The court said further on page 390 that:
“We are, therefore, forced to the conclusion that the act under consideration, so far as it applies to the owners and users of motor vehicles, is, in large part, a general revenue measure and to that extent is unconstitutional and void.”
In the Saviers case, supra, paragraph five of the syllabus, the court says:
“The state has full power to regulate the use of motor vehicles on its highways and may exact reasonable compensation for special facilities afforded, and make reasonable provision to insure safety.”
The Saviers case was an attack upon the constitutionality of the act of the General Assembly, passed December 16, 1919, providing for the levy and collection of a tax in the *111 operation of motor vehicles on the public highways of the state. In the opinion, at page 142, the court says:
“As we have already shown, the law in question is a tax law. Its purpose is manifestly the production of revenue to be used for the purpose specifically set forth. If the law raised sufficient to pay only the expense of administering it, it would not be a tax at all. It would be in the nature of a license. Being a tax laid on a privilege for a specific purpose to be used for the maintenance and repair of the thing concerning which the privilege is granted, it is a valid tax unless unreasonable. The'use of the entire proceeds in aid of the specific privilege enjoyed by those who pay the tax is an essential feature in determining its reasonableness.”
Section 6309-2b of the act, the constitutionality of which is inqssue’m this case, allows a diversion to other than highways uses of fifty-two per cent of the money arising from these motor license fees for the years 1932 and 1933, and is clearly unconstitutional, if its constitutionality is to be tested by the rule announced in the Graves and Saviers cases, namely, “that the use of the entire proceeds in aid of the specific privilege enjoyed by those who pay the tax is an essential feature in determining its reasonableness.”
Argument — Counsel for Demurrer.
In support of their claim, counsel for the demurrer cites Section 5, Article XII of the Ohio Constitution and the opinion of the Attorney General of Ohio, No. 3314-1931. Section 5, Article XII of the Ohio Constitution is as follows:
“No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.”
Counsel points out that these motor license fees are provided for by laws duly passed.by the General Assembly, in which the object^ for which these fees may be used are distinctly named and that county officials are devoting the fund to uses distinctly named in the law, in full compliance with Section 5, Article XII, supra, and then they say “that that is all that is necessary to authorize the use of such funds for any and all of the purposes named therein, including the use for the general funds of the county.”
*112 It seems to me that counsel are in error as to their theory of Section 5, Article XII of the Ohio Constitution. This section is merely an express limitation or direction to the General Assembly of Ohio as to the manner of its exercise of its taxing powers which are vested in the General Assembly by other provisions of the Constitution. A power, and the manner of its exercise are entirely different matters.
Excerpts from the brief of counsel in support of the demurrer'are not entirely clear as to whether they would have the court reject the doctrine of implied limitations of the power of the General Assembly to tax privileges as announced by the Supreme Court in the Southern Gum Company and Saviers’ cases, and the Court of Appeals in the Graves case. Some of the statements of counsel seem to indicate that they would have the court arbitrarily disregard these decisions, as for example the following to-wit:
“There being no specific restrictions in the Constitution, these taxes might, if levied for purposes stated in the levying act, have been used for any public purpose, if so stated by the distribution act of the legislature. It is our contention that an excise tax may be levied and used for any purpose which requires a levy of a tax and it is not limited in its use by the Constitution or otherwise in aid of the specific purpose enjoyed by those who pay the tax, although such use of the tax may be an essential feature in determining its reasonableness.”
Other statements in counsel’s brief indicate that they would leave the doctrine of these cases stand, but would reject the method of testing the reasonableness of these privilege taxes as set forth by the Supreme Court in the Saviers v. Smith, Sec’y., case, — to the effect that the use of the money arising from these license fees for other than highway purposes is conclusive of the unreasonableness of the charges and to the extent of such diversion is unconstitutional.
As to this, I quote from counsel’s brief this statement, to-wit:
“The question in this case is not whether the tax is reasonable. Plaintiff admits it is reasonable if used entirely for road purposes. If it is a reasonable tax to be paid by the owner of an automobile for the privilege of operating *113 on the public highways, if the price exacted is not exorbitant for the privilege itself, then it is a reasonable tax for any purpose for which the tax may be legally used.”
Judging from these excerpts from counsel’s brief, counsel would allow the General Assembly to divert at will these privilege taxes to other than highway purposes, but restrict the fees or charges for the privilege to the value of the privilege, which would be conclusive as to their reasonableness; and in an issue as to the reasonableness of these license taxes counsel would have that decided by some sort of an academic or theoretical investigation, of what might, should or could, with propriety be spent in the construction and upkeep of the public roads. If that is the only way to test the reasonableness of these privilege taxes, as counsel seem to think, then the sky is the limit as to taxation of this character.
I cannot warm up to counsel’s argument; — in my judgment, the only way to secure motor vehicle owners that these taxes are to be reasonable is to require that the monies from the same be spent entirely upon the public roads and highways, then motor vehicle owners will have the public roads and highways for what they paid, and have the good judgment and conscience of road officials as security that these privilege charges and taxes will not be greater than is reasonably necessary for the upkeep of the roads and highways of the state.
Attorney General’s Opinion.
It seems that at the time that what is now Section 6309-2b, General Gode, was pending before the House Committee on taxation, the attorney general was asked his opinion of the constitutionality of said section and in response to the request he gave it as his opinion that Section 6309-2b, authorizing a diversion of merely a “part of these license taxes, for limited time,” was constitutional. The attorney general does not cite any provision in the Ohio Constitution, nor any divisions in support of his opinion, but in reading the very interesting opinion of the attorney general I conclude that he is not greatly enamored of the doctrine of implied limitations of the power of the General Assembly to levy privilege taxes as announced by the Supreme Court in the Southern Gum Company and Saviers *114 cases, and by the Court of Appeals in the Graves case. He quotes Cooley on Taxation (4th Ed.) Vol. 1, Section 70, as follows:
“The sole arbiter of the purposes for which taxes shall be levied is the legislature, provided the purposes are public purposes. The courts may review the levy of the tax to determine whether the purpose is a public one but when once that is determined the courts can make no other inquiry as to the purpose of a tax, as affecting the power to impose it. It may levy a tax for any purpose provided the purpose is a public one.”
And says further, quoting the case of State of Ohio, ex rel. v. Ferris, 33 O. S., 314:
“The constitution is silent as to the application of the fund arising on taxation on subjects other than property. The constitution being silent, it follows that if such taxes can be levied and collected at all, that their application is within the sole and exclusve power and discretion of the general assembly.”
From these, and other citations the attorney general reaches the conclusion:
“The motor vehicle license fees provided for by the act herein question, being, in every sense of the term, excise taxes exacted under the general taxing power of the state, it follows that in the absence of constitutional provisions limiting the application of the proceeds of such taxes, the legislature may distribute such proceeds and apply the same to such public uses and purposes as it may see fit.”
What the attorney general says may be a good argument for him to address the Supreme Court of Ohio to induce it to discard the principle announced in the Southern Gum Company case “that the power of the General Assembly to tax privileges” is impliedly limited by Section two and nineteen of the Bill of Rights and, “that by reason of these limitations, a tax on privileges cannot exceed the reasonable value of the privilege conferred” and the principle announced in the Saviers case that “the use of the entire proceeds in aid of the specific privilege enjoyed by those who pay the tax is an essential feature in determining its reasonableness.”
It is sufficient'for this court to note that the authorities cited by the attorney general are no warrant for his hold *115 ing that a diversion to other than highway uses of a “part” of the funds arising from these motor license fees, for a “limited time,” is constitutional.
We are inclined to think that the attorney general in holding this section constitutional on the ground that it provides merely for a diversion of a “part” of these fees for a “limited time;” had in mind the exigencies of the times — the existence of an emergency, as warranting his holding Section 6309-2b,. constitutional, but as to that it must be noted that the General Assembly did not in the act in question declare the existence of an emergency, nor does counsel for defendants seek to defend the demurrer on that ground..
If Constitutions, U. S. and State, are to give way, become inoperative in face of an emergency, who, may I ask, is to decide the existence of such an emergency, and what are the principles by which the question may be determined ?
In the Southern Gum Company case the Supreme Court of Ohio says:
“But upon the power to tax privileges and franchises there is no express limitations in the constitution, but certain limitations upon that power must be implied from other provisions of the constitution, so as to make the whole instrument harmonious and consistent throughout.”
The court said further at page 594 of the opinion that “these limitations prevent confiscations and oppressions under the guise of taxation.”
There is no suggestion anywhere in the opinion that there may be a departure from the construction given in the event of an emergency or out of respect to the exigencies of the times, hence, I cannot permit any question of that kind to influence me in my decision on the demurrer.
I consider neither the U. S. or State Constitutions merely fair weather documents. If the U. S. and State Constitutions are not ports that may be entered in a storm, for protection of the rights of persons, and property, then they are of little value. In fair weather we can haul up to a shallow beach or tie up to a willow bush.
The Supreme Court of Colorado in Walker v. Bedford, *116 No. 13380, expresses my view on this subject better than I can myself, when in its opinion it said:
' “We pronounce as the most certain of law that there has never been and can never be an emergency confronting the state that will warrant the servants of the constitution waiving so much as a word of its provisions. Armed men may destroy the government. Military rule, or the rule of the mob, may replace the orderly processes that have been our fortune since sovereignty was granted us by the United States. But no species of reasoning, no ingenuity of construction, no degree of emergency, can persuade us that the Constitution is without potency or dissuade us from performing our duty as its sworn officers.”
There is no question as to the power of the General Assembly to charge owners of motor vehicles license fees for the privilege of using the public roads and highways of the state; nor to apportion the money arising from the same to the state and its political subdivisions — -the municipalities, counties and townships; and if it comes to pass that the state and its political subdivisions be not required to apply their apportionments of this tax to the construction and upkeep of the public roads, but may be authorized to use the same as general revenues, for libraries, poor relief and whatnot, then the door is open and owners and users of motor vehicles are likely to be overwhelmed with confiscatory and oppressive taxation of this character.
It may in truth be said that if it be held that money from these fees may be diverted to other than highway purposes, that then by motor license fees, gasoline taxes, and other forms of excises with which owners of motor vehicles may be charged, that they are likely to wake up some morning and find themselves, as a class, paying substantially the whole cost of the public roads and a large proportion of the other expenditures of the state government and its political subdivisions, and have left only the political remedy as a means of relief.
We can well appreciate the great wrong of legislation authorizing the diversions of the monies from these license fees to other than highway expenses, when we have in mind that these license fees are taxes levied against a class of the citizens, — the owners and users of motor vehicles— as distinguished from the whole body of the citizenry; and *117 are justified by the courts on the sole ground that they as a class are the chief beneficiaries of the public roads and highways, and in justice should contribute to the upkeep of the same, — even to the full value of the privilege of using the public roads, which value might well be considered equal to the cost of the construction and upkeep of the same.
Even under the salutary policy followed by the general assembly until the enactment of Section 6309-2b, supra, of restricting the use of these license fees to highway purposes, excise taxes levied against the owners and users of motor vehicles have increased with the passing years until in 1932 owners and users of motor vehicles paid into the state a sum of money in excess of fifty per cent of the cost of. state government.
There are practical questions involved in the matter before the court. The public roads and highways are a basic necessity for the profit and pleasure of the people. Their modernization, both as to construction and upkeep, must keep pace with motorized travel and traffic, and this will cost money and lots of it. Who, may I ask, are to pay the cost of the public roads of the state if the monies from excise taxes paid by the owners and users of the public roads are to be used for other purposes? Why, if not through excise taxes levied against the owners and users of motor vehicles, then the cost must come out of general revenues or by assessments on abutting property. Abutting property owners should be left out of the picture except so far as they are a part of the public or owners and users of motor vehicles. To assess abutting property for any part of the cost of the public roads, having in mind the high cost of construction and upkeep of the present day roads and the kind of travel and traffic, is manifestly unfair.
Before the advent of the motor vehicle the public roads were almost wholly a matter of local importance, and local people paid practically the whole cost of their construction and upkeep, and that was proper because they were primarily for the benefit of the local people. The coming of the motor vehicle into modern life has wrought a change in the character of the public roads in the sense that they *118 cease to be primarily a matter of local interest, but have become primarily a matter of necessity and interest to the general public, hence, their construction and upkeep should be either charged to the owners and users of the same or paid out of the general revenues.
Besides the injustice to the owners and users of motor vehicles resulting from the diversion of these fees to other than highway purpose the result of a policy of this sort will be a gradual deterioration of the highways of the state and a let-up in the development of the highways system of the state.
On the authority of the decisions of the Supreme Court of Ohio in The Southern Gum Company and Saviers cases, and the Appeals Court in the Graves case, this court holds Section 6309-2b, General Code, authorizing the diversion of fifty-two per cent of the motor license fees collected for the years 1932 and 1933 to other than highway purposes, unconstitutional;
Wherefore, demurrer to the petition will be overruled.
If counsel for the demurrer do not care to plead further judgment may be taken in accordance with the prayer of the petition, unless counsel for the demurrer desires to be heard as to the substance and form of the judgment.